ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| ██████████████████████ ) | ASBCA No. 60315 |
| ) | |
| Under Contract No. HTC711-14-D-R033 ) | |

APPEARANCE FOR THE APPELLANT: ██████████████████████
President

APPEARANCES FOR THE GOVERNMENT: Jeffrey P. Hildebrant, Esq.
Air Force Deputy Chief Trial Attorney
Lt Col Mark E. Allen, USAF
Jason R. Smith, Esq.
Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

The United States Transportation Command (government) awarded ████████
████████████████ ( ████ ) a commercial trucking services contract in Afghanistan.
████ argues that the government breached the contract by failing to provide a fair opportunity to compete, improperly terminating the contract, and by breaching the implied duty of good faith and fair dealing. Pending before the Board is the government's motion for summary judgment, asserting that there are no disputed material facts and that ████ fails to establish any contractual violation. We grant the government's motion and deny the appeal.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 9 January 2014, the United States Transportation Command awarded Contract No. HTC711-14-D-R033 to ████ for commercial trucking services in Afghanistan (R4, tab 14). ████'s contract was one of 23 awarded under the National Afghan Trucking Program (NAT II) (R4, tab 34 at 1). The NAT II was a firm-fixed-price, multiple-award, indefinite-delivery, indefinite-quantity (IDIQ) contract (R4, tab 14). The contract had an original base period of 24 January 2014 to 15 December 2014 with two one-year options and one six-month option (*id.* at 5-7).

2. The contract contained Federal Acquisition Regulation (FAR) clause 52.216-22, INDEFINITE QUANTITY (OCT 1995), which provided, in relevant part:

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the

Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

(R4, tab 14 at 12)

3. The contract also contained FAR clause 52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000), which provided, in relevant part, that the government "may extend the term of this contract by written notice to the Contractor" (R4, tab 14 at 12).

4. The contract's Performance Work Statement stated that the government "will normally provide the contractor's [Program Manager] at least 96 hours notice of a mission requirement; however, the contractor shall be able to respond within 48 hours for urgent requirements" (R4, tab 14 at 80). The Performance Work Statement also required the contractor to attend a post-award conference; have contractor employees enrolled in the Synchronized Pre-Deployment and Operational Tracker (SPOT) and have a SPOT-generated Letter of Authorization (LOA) for its employees prior to employment; to work on holidays; and to maintain Defense Base Act (DBA) insurance (R4, tab 14 at 64-65, 67).

5. By task order dated 17 January 2014, the contracting officer paid the contractually guaranteed minimum of 129,500 afghani (AFN) to ▮▮▮ (R4, tab 16). The government had previously provided ▮▮▮ the opportunity to invoice for the guaranteed minimum order (R4, tab 39 at 3). The contracting officer also issued contract Modification No. P00001 to the contract, dated 17 January 2014, which notified ▮▮▮ that the NAT II award decision was being protested to the Government Accountability Office (GAO) and that "[t]he contractor is hereby notified to suspend performance until further notice. Only the Contracting Officer is authorized to allow performance to resume under this contract." (R4, tab 15 at 1)

2

6. By memorandum dated 30 April 2014, the contracting officer notified ▮ that it had been reaffirmed as an awardee under the NAT II contract and that the government expected "to complete a modification of your contract removing the Stop Work Order following the debriefing period" (R4, tab 21 at 3).

7. By memorandum dated 14 May 2014, the contracting officer notified all NAT II contractors that three unsuccessful offerors of the NAT II contract had filed protests with the GAO and that performance would continue "to be suspended pending disposition of the protests" (R4, tab 22 at 1).

8. ▮ asserts that the government became aware that requirements for trucking services in Afghanistan were being sharply reduced and were projected to continue to decline in the NAT II option years around 22 August 2014 (app. resp. at 3). On 8 September 2014, a kick-off meeting took place for the NAT II contract (compl. at 2).

9. By memorandum dated 11 September 2014, the contracting officer notified ▮ that the stop work order was being lifted on the NAT II contract and directed ▮ "to start preparing for performance in accordance with the terms and conditions of HTC711-14-D-R033." The contracting officer also noted that the official notice to proceed would be issued around 16 October 2014 along with a formal modification. (R4, tab 23)

10. By letter dated 25 September 2014, the government informed ▮ that the contract base period would only have a period of performance of two months (16 October 2014 through 15 December 2014) and that only around seven NAT II contractors would have their contracts' option years exercised. The contracting officer offered SWT the opportunity to execute an immediate no-cost termination of its contract. (R4, tab 24)

11. By email dated 26 September 2014, the contracting officer notified NAT II contractors that the modification to lift the stop work order had not been issued and that the stop work order was still in effect (R4, tab 25).

12. By memorandum dated 7 October 2014, the contracting officer notified ▮ that the government would not exercise the first option period on the contract (R4, tab 27). By a ten-page memorandum signed 22 November 2014, the contracting officer outlined determinations and findings in support of the NAT II contractors who had their option years exercised (R4, tab 34). The determination noted that the military was downsizing, reducing the need for commercial trucking services, that there was a similar decline in contracting personnel to administer the contracts, and that the contracts required high fixed costs for a 24-hour operations center and DBA insurance (id.). The determination concluded that awarding all options would "expose the contractors to unnecessary start-up costs with no real expectation of recovering their initial outlay" (id. at 3). The determination further reasoned that these financial risks could affect the viability of the contractors and become a force protection issue (id.).

3

13. The contracting officer issued no competitive task orders under the NAT II contracts during the base period (R4, tab 43 at 1).

14. By email dated 8 July 2015, ███ submitted a certified claim demanding payment for expenses allegedly incurred during the performance of the contract in the amount of $5,547,248.98 (R4, tab 44).

15. By memorandum dated 25 August 2015, the contracting officer issued a final decision denying ███'s certified claim (R4, tab 47). ███ timely appealed to this Board on 7 November 2015.

## DECISION

███ argues that the government "performed a breach of contract for failure to provide fair opportunity to compete and be considered for orders, improper termination, failure to perform in good faith, bad faith issuance of the minimum order guarantee and improper use of the Option to Extend Services" (compl. at 3). The government argues that there are no disputed material facts and that it is entitled to judgment as a matter of law because it paid the guaranteed minimum required by the contract and its actions were consistent with the terms of the contract.

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984). The government has met its burden of establishing the absence of disputed material facts.

I.     Failure to Provide a Fair Opportunity to Compete For Task Orders

We start with ███'s first argument that the government "breach[ed] [a] contract for failure to provide fair opportunity to compete and be considered for orders." This argument fails because there were no competitive task orders issued under the NAT II contract during the base period (SOF ¶ 13). ███ was given the opportunity to invoice for the contract minimum order guarantee during the base period (SOF ¶ 5), satisfying the government's contractual obligation under the IDIQ contract. *RJO Enterprises, Inc.*, ASBCA No. 50981, 03-1 BCA ¶ 32,137 at 158,908 (because it was an IDIQ contract the

4

government "was obligated to purchase no more than the contractual minimum quantity").

## II.   Improper Termination

████ next alleges that the government improperly terminated the contract. Since there was no actual termination of the contract, ████ appears to be alleging a de facto termination through the government's suspension of work and failure to exercise the contract's first option. This argument fails as well because the suspension of work and termination for convenience clauses provide no relief when no work was ordered under an IDIQ contract and the contractor has been paid the minimum contract value. *See Beneco Enterprises, Inc.*, ASBCA No. 46405, 96-2 BCA ¶ 28,531 at 142,468 (concurring majority). In *Beneco*, the appellant, like ████ here, sought costs allegedly incurred during a suspension of work due to a post-award bid protest. The Board denied the appeal because no work was ordered under the IDIQ contract so no performance was suspended. The Board noted that appellant's only relief was through the Minimum Contract Value clause. *Id.*

## III.   Good Faith and Fair Dealing and Bad Faith

████ next alleges that the government breached the implied duty of good faith and fair dealing. Implied in every contract is a duty of good faith and fair dealing in its performance and enforcement. *Lakeshore Eng'g Servs., Inc. v. United States*, 748 F.3d 1341, 1349 (Fed. Cir. 2014); *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014). It is well settled that the covenant of good faith and fair dealing "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). "What is promised or disclaimed in a contract helps define what constitutes 'lack of diligence and interference with or failure to cooperate in the other party's performance.'" *Metcalf Constr.*, 742 F.3d at 991 (quoting *Malone v. United States*, 849 F.2d 1441, 1445 (Fed. Cir. 1988)). "[T]he nature of that bargain is central to keeping the duty focused on 'honoring the reasonable expectations created by the autonomous expressions of the contracting parties.'" *Id.* (quoting *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1152 (D.C. Cir. 1984)). The implied duty of good faith and fair dealing cannot create duties inconsistent with the express provisions of the contract. *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014).

████ initially alleges that the government breached the implied duty of good faith and fair dealing by failing to exercise the contract's first option. However, the government has broad discretion when exercising options. In *Plum Run, Inc.*, ASBCA No. 46091 *et al.*, 97-2 BCA ¶ 29,193 at 145,230, we held that the government possesses discretion in exercising options and that a contractor can only prevail by

5

establishing bad faith, abuse of discretion, or arbitrary or capricious action. The contract's Option to Extend the Term of the Contract clause itself presupposes discretion, employing the word "may" (SOF ¶ 3). ████'s citation to *Community Consulting International*, ASBCA No. 53489, 02-2 BCA ¶ 31,940 (compl. at 5), is factually distinguishable because that case involved allegations that the appellant was not fairly considered for task orders. Here, no competitive task orders were issued during the base period (SOF ¶ 13).

Moreover, the government justified its decision not to exercise the first option year to some but not all NAT II contractors in a ten-page determinations and findings memorandum (SOF ¶ 12). The determination noted that the military was downsizing, reducing the need for commercial trucking services, that there was a similar decline in contracting personnel to administer the contracts, and that the contracts required high fixed costs for a 24-hour operations center and DBA insurance (*id.*). The determination concluded that awarding all options would "expose the contractors to unnecessary start-up costs with no real expectation of recovering their initial outlay" (*id.*). The determination further reasoned that these financial risks could affect the viability of the contractors and become a force protection issue (*id.*). Thus the failure to award option years to ████ was not done in bad faith nor was it an abuse of discretion or arbitrary or capricious. Therefore, the government provided ████ "fair opportunity" to compete and be considered for orders. In light of the government's discretion in determining whether to exercise an option and the lack of an obligation to do so, ████ could only have reasonably assumed that the contract would be for the base period. ████ alleges that the government failed to properly follow the evaluation criteria for exercising option years. This is not a reasonable belief. ████ does not point to any clause in the contract which a reasonable person could interpret to mean the government restricted its discretion to exercise options. Thus, ████ has not shown that there was a breach of the implied duty of good faith and fair dealing when the government declined to exercise the contract's option.

████ next asserts that the government required it to do specific tasks such as attending a post-award conference, working on a holiday, and incurring expenses for DBA insurance, SPOT authorization and SPOT-generated LOAs. ████ also states that the contracting officer encouraged ████ to "remain in a state of ready with trucks and personnel in anticipation of starting performance" despite knowing that mission needs would be significantly reduced (app. resp. at 3). However, the terms of the contract require the contractor to perform these tasks (SOF ¶ 4). ████ does not explain how the government's actions constitute a breach of the implied duty of good faith and fair dealing, given that the actions it complains of are provided for in the contract. As such, there was no breach of the implied duty of good faith and fair dealing.

Since the nature of the bargain is central to honoring the reasonable expectations of the parties, we next turn to the bargain itself. ████ was awarded one of the contracts under the NAT II program. The NAT II program was a firm-fixed-price, multiple-award,

6

IDIQ (SOF ¶ 1).  The government paid ███ the contract minimum order guarantee (SOF ¶ 5).  The government had discretion under the contract as to whether to exercise the contract's option (SOF ¶ 3).  Thus, the government honored the reasonable expectations of the parties and did not breach the implied duty of good faith and fair dealing.

Finally, ███ also alleges that the government acted in bad faith.*  It is well established that government officials are presumed to act in good faith.  *Road and Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368 (Fed. Cir. 2012).  To prove that a government official acted in bad faith, a contractor "must show a 'specific intent to injure'" by clear and convincing evidence.  *Id.* at 1369 (quoting *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002)).  In deciding a motion for summary judgment, we must determine whether a reasonable fact finder could find by clear and convincing evidence that the government acted in bad faith.  *Am-Pro,* 281 F.3d at 1239-41.  ███ has not alleged any facts to show that the government had a "specific intent" to injure ███ in any of its allegations.  Moreover, even if the allegations were sufficient to demonstrate an intent to injure, they are just allegations and are not supported by citation to any evidence pursuant to Board Rule 7(c).  Thus, a reasonable fact finder could not find by clear and convincing evidence that the government acted in bad faith.

We have considered appellant's remaining arguments and find they have no merit.  The government's motion for summary judgment is granted.  Accordingly, the appeal is denied.

Dated:  21 November 2016

*[signature]*

_____
DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

* It is unclear whether or not appellant is alleging bad faith or a breach of good faith and fair dealing.  We will read appellant's assertion as alleging both, using the same arguments.

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60315, Appeal of ████ ████████████, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8